COURT OF APPEALS OF VIRGINIA


Present:  Judges Elder, Frank and Senior Judge Hodges
Argued at Richmond, Virginia


HOMER D. MONTAGUE, SOMETIMES KNOWN AS
 HOMER DONTE MONTAGUE
                                        OPINION BY
v.    Record No. 2003-98-2          JUDGE ROBERT P. FRANK
                                        DECEMBER 21, 1999
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                    Walter W. Stout, III, Judge

            Gregory W. Franklin, Assistant Public
            Defender (David J. Johnson, Public Defender,
            on brief), for appellant.

            Virginia B. Theisen, Assistant Attorney
            General (Mark L. Earley, Attorney General, on
            brief), for appellee.


     In a jury trial, Homer D. Montague (appellant) was

convicted of grand larceny, attempting to elude a police

officer, and felony murder.  On appeal, appellant contends:

1) the evidence was insufficient to support his conviction of

felony murder because the underlying felony was complete before

the homicide occurred; 2) the court erred in instructing the

jury that they could return a conviction for felony murder

solely upon finding a causal relationship between the underlying

felony and the accidental killing; and 3) the court erred in

instructing the jury that they could find that appellant was

committing grand larceny at the time of the victim's death.  In

finding the evidence insufficient to support appellant's conviction for felony murder, we do not reach issues two and three. We, therefore, reverse appellant's conviction of felony murder and remand for further proceedings if the Commonwealth be so advised.

## I. BACKGROUND

On August 23, 1997, between eleven o'clock in the morning and noon, Leslie Louick parked her red Dodge Shadow on Grayland Avenue in Richmond. Around noon the next day, she discovered that her car was not where she parked it the day before. Ms. Louick reported to the police that the car had been stolen.

Later that evening, officers from the Richmond police department set up a traffic checkpoint on the north end of the Fourth Street Bridge. Officer Chester Roberts was positioned on the median as the southbound "chase car." He was assigned to apprehend any vehicle that attempted to avoid the checkpoint.

Between ten and eleven o'clock, Officer Roberts observed two cars turn onto the bridge at the south end of the bridge. One was a large, dark sedan, and the other was a red car. The red car was later identified as the car belonging to Ms. Louick. The cars traveled for approximately one hundred feet on the bridge and then made U-turns across the solid, double, center lines. Officer Roberts activated his emergency lights and siren and pursued the vehicles. After several blocks, the sedan turned left at an intersection and the red car continued

travelling straight.  Officer Roberts followed the red car into the Gilpin Court community, a residential area.  The red car attempted to make a left turn, went into a skid by an apartment building, and then jumped the curb and crashed into a large rock.  The red car came to a stop, and the driver exited the vehicle and fled on foot.

Officer Roberts started to pursue the driver when he heard a young girl screaming about her friend.  At that time, Officer Roberts saw the victim, a ten-year-old boy.  The girl and the victim were riding their bikes when the red car jumped the curb and struck the victim.  The girl testified that she saw appellant driving the red car earlier that day.

Officer Duncan Pence arrived at the scene of the accident.  Officer Roberts remained with the victim, and Officer Pence pursued and apprehended appellant.  The victim suffered a brain injury and died when he was removed from a life support system at the Medical College of Virginia.  The jury convicted appellant of grand larceny, attempting to elude a police officer, and felony murder.

## II.  ANALYSIS

Under familiar principles, we view the evidence in the light most favorable to the Commonwealth, the party prevailing below, granting to it all reasonable inferences fairly deducible therefrom.  See Clifton v. Commonwealth, 22 Va. App. 178, 180, 468 S.E.2d 155, 156 (1996).  We will not reverse the judgment of

the trial court unless it is plainly wrong or without evidence to support it. See Code § 8.01-680.

Code § 18.2-33 defines felony murder as "[t]he killing of one accidentally, contrary to the intention of the parties, while in the prosecution of some felonious act other than those specified in §§ 18.2-31 and 18.2-32."

The Supreme Court of Virginia has adopted the res gestae theory in applying the felony murder statute. See Haskell v. Commonwealth, 218 Va. 1033, 243 S.E.2d 477 (1978). Under the res gestae theory, the felony murder doctrine applies when the "initial felony and the homicide [are] parts of one continuous transaction, and [are] closely related in point of time, place, and causal connection." Id. at 1041, 243 S.E.2d at 482. We have held that the "[d]eath must be directly related in time, place, and causal connection to the commission of the felony; the felony or acts in furtherance thereof must contribute to cause the death to constitute a 'killing' within the felony-murder statute." King v. Commonwealth, 6 Va. App. 351, 357, 368 S.E.2d 704, 707 (1988).

In Davis v. Commonwealth, 12 Va. App. 408, 404 S.E.2d 377 (1991), we affirmed a conviction for felony murder where a motorist, who had been declared an habitual offender, caused an accidental death. The accident occurred when the driver was attempting to elude police in order to "avoid being caught committing the felonious act of driving after being declared an

habitual offender." Id. at 413, 404 S.E.2d at 380. In applying the res gestae theory, we held that because the habitual offender was committing the offense and attempting to escape detection when the accident occurred, the accident was "'a consequence or action which was directly intended to further the felony.'" Id. The felony was the act of driving after having been declared an habitual offender, a continuing offense, which the driver was committing at the time of the accidental death.

In King, we applied the res gestae theory and found no causal connection between an airplane crash, which resulted in an accidental death, and the defendant's possession of marijuana with the intent to distribute. See King, 6 Va. App. at 358, 368 S.E.2d at 707-08. The defendant and his copilot were transporting over five hundred pounds of marijuana by airplane when they encountered heavy cloud cover and fog. See id. at 353-54, 368 S.E.2d at 705. They flew the plane at a lower altitude in order to follow U.S. Route 52. See id. at 354, 368 S.E.2d at 705. The plane crashed into a mountain, and the copilot was killed. See id. In applying the res gestae analysis to determine whether the defendant was accountable for the felony murder of the copilot, we wrote:

> In the present case, King and Bailey
> were in the airplane to further the felony
> of possession of marijuana with the intent
> to distribute. They were flying over the
> mountains while committing the felony. The
> time and the place of the death were closely
> connected with the felony. However, no

> causal connection exists between the felony
> of drug distribution and the killing by a
> plane crash.  Thus, no basis exists to find
> that the accidental death was part or a
> result of the criminal enterprise.

Id. at 358, 368 S.E.2d at 707-08.

In Doane v. Commonwealth, 218 Va. 500, 502, 237 S.E.2d 797, 798 (1977), the Supreme Court of Virginia held that the theory of larceny as a continuing offense is a fiction created in the common law and declined to extend the fiction to satisfy the felony murder statute.  The Court held that the Commonwealth did not demonstrate a nexus between the larceny of the vehicle and the traffic accident because the larceny of the vehicle was completed in Richmond while the fatal traffic accident occurred in Smyth County the following day.  See id.  Therefore, larceny is not a continuing offense for the purpose of determining whether a killing occurred during the prosecution of a felonious offense.

In this case, Ms. Louick testified that she parked her car on Grayland Avenue on August 23 between eleven o'clock in the morning and noon.  She discovered that it was stolen around noon the next day.  Therefore, the latest time that her car could have been stolen was noon on August 24, almost eleven hours before the accident that resulted in the death of the victim in this case.

Applying the res gestae theory, which requires the accidental death to be related in time, place, and causal

connection to the underlying felony, we hold that the accidental killing of the victim was not related in time to the larceny of Ms. Louick's car.[1]  In _Doane_, the Supreme Court of Virginia held that larceny is not a continuing offense for the purposes of applying the felony murder statute.  Under the facts of this case, the larceny of Ms. Louick's vehicle was completed at the latest by noon on August 24, 1997, and, therefore, was not related in time to the accidental killing.  At the time of the accident, appellant was not prosecuting the felonious act of larceny.

### III.  CONCLUSION

For these reasons, we find the evidence insufficient to support appellant's conviction of felony murder.  We, therefore, reverse the judgment of the trial court and remand for further proceedings if the Commonwealth be so advised.

_Reversed and remanded._

---

[1] In the absence of one of the elements in the _res_ _gestae_ analysis, the conviction for felony murder fails.  See _King_, 6 Va. App. at 358, 368 S.E.2d at 708.  Therefore, having determined that the accidental killing of the victim in this case was not related in time to the grand larceny of Ms. Louick's vehicle, we do not discuss whether the accidental death was related in place and causal connection.